The case will be taken under advisement and we move to the fifth case this morning, Arnold v. Dittmann. Good morning, may it please the court. I suggest to this court, before it decides the weighty issue, whether there can be a free standing claim of actual innocence to prevent denial of due process and what the technical standard should be, this court should remember that this is a court of law. We demand the case to the district court for an evidentiary hearing to give the defendant a chance to establish a persuasive showing of actual innocence. The evidence of the new affidavit of his son recanting his testimony about the crime should be evaluated with the evidence of trial and all other previous proceedings. This approach is consistent with the U.S. Supreme Court decision in Ray Davis. It's consistent with the circuit and majority of the others, practically all the cases. And it's also consistent with our common law based system, which resolves important questions, not in a vacuum, but in a context and with well-developed factual records. Mr. Kriegman, if we were to remand for a hearing, as to the credibility of the M.A. patient, could the judge plausibly credit the recantation, but that it doesn't meet the schlup standard? In other words, that the recantation is credible, but not so compelling as to suggest that no reasonable jury would have convicted Mr. Arnold. Well, you have to evaluate the evidence at the hearing. I mean, the first stage is the hearing itself. And I think why I believe there's a strong case to meet the schlup standard, or maybe even a higher standard, is that this recantation would show that there's no crime. And it's also corroborated by other things in the record. There's two prior inconsistent statements, which would now become, at an evidentiary hearing, a prior consistent statement. Also, there's other things in the record that would give credence to this affidavit. I mean, when you look at the testimony of M.A., he was questioned on direct before he did a rebuttal. When he was cross-examined, he asked, did his father have any unusual things about his genitalia? And he said no. And he had passings on his penis, and he had tattoos on his groin area, and he was a little unusual about the time periods when this alleged abuse started. He said it could have been March, it could have been April, but that would have been an impossibility. But the fact is, he thought it was during Memorial Day. You know, it's a long time since I was 13 years old, but I think when I was 13 years old, I knew Memorial Day was at the end of May. So when you look at the whole, I mean, that would be the purpose of the evidentiary hearing, is to measure the quality of the evidence and see if it can meet whatever standard. We haven't, it hasn't been resolved what the standard is. I think it should be a sloop standard on a first-time habeas rather than a higher standard, which would probably be clear and convincing evidence. But he should at least have the opportunity to have that hearing. Did he ask for an evidentiary hearing in the state courts? The pleadings are jumbled in this case. I mean, what's in the record is his habeas. It was done pro se. I mean, I couldn't... In the state courts, were the state courts asked to consider the affidavit? They were asked to consider the affidavit, that's correct. In a hearing, or... It was denied without a hearing. It was denied without a hearing, and the pleadings were pro se. I mean, the habeas pleadings are jumbled, too. The only thing that I could reach out was a freestanding claim of excellency. The cross-examination occurred in federal court. The cross-examination of the witness was at trial, the direct trial. So, Mr. Friedman, has the Supreme Court or any other circuit decided that a witness's recantation is enough to either grant relief or require a hearing in an otherwise constitutional conviction? What I've reviewed through the law review articles that I cited and the cases I cited in the briefs, including the opinion that was written by you for the court, is that most of these cases, there were hearings that determined the facts, and then they said it didn't meet enough for a freestanding claim of excellence, or it did not meet a sloop standard. But they had some sort of a hearing, like Tabb case, the case I'm referring to. He had an actual innocence hearing in state court. It should be, I mean, we would have a different case if he had an innocence hearing in state court, which the federal court didn't look at and say he had his due process of innocence. Wisconsin doesn't even allow that. So all the cases that we cited, they usually, they grant the hearing if the recantation would defeat the crime. A lot of them say the affidavit is not enough because it still should be evidence of the crime itself. In this case, the recantation defeats the crime, and I think that's one of the most interesting things about the cases, that most of these cases, if not all, I can't say all, is that usually there's a hearing, and they say you just didn't meet it, or you found that the recantation was not believable after cross-examination. I can't come in and say we win just on the affidavit. The state has a right to cross-examine. Of course. Your position, though, would have pretty sweeping implications, it seems to me at least. For example, think about domestic violence cases where a victim who testified at an original trial then recants for whatever reason, and then either the state or federal courts, under your theory, would seem to be obliged basically to retry the case to the judge. I don't think it is that broad. You have to look to see whether there's other corroborating evidence. If there was nothing, a more tougher case would be just the recantation. Here there was two prior inconsistent statements, and actually more because apparently in the KITT program he was alluding to that it didn't happen either. So there was that, and then his testimony was impeached at the trial. So you have something else. If there was nothing else in the record, and then the recantation is there, frankly the articles, the law review articles that I cited say yes, but we don't even have that. We have a stronger case than that. And so that's, I mean, and the numbers, I mean there's, exonerations for fabrications concerning sex, 95% of them were sexual abuse. And it's cited in the national registry, it's in the brief. 55% of exonerations were fabrications of crimes against children. So there's a lot of evidence that these cases need to look at closely. At least give them a hearing. And I don't think it's that overwhelming. I mean, you put on the son again, you maybe put the defendant on, and then maybe you bring the counselor in. You know, it could be a day hearing, day and a half hearing. What about all the other witnesses from the trial? The trial, there was no other eyewitnesses, and there were no other physical evidence in the trial. Not eyewitnesses, but the, you know, people who Mr. Arnold brought on as his witnesses. Yes, so we put in those two prior inconsistent statements, which are now prior consistent statements. Right, okay. One of them has passed, so the transcript we have to get. Was there evidence of any contact between the father and the son during this period of time? Was there any evidence? It was just a testimony of the son. That was the sole evidence. Maybe I didn't ask the question correctly. Any indication that the father and the son conversed or had communication during this period of time? I have no knowledge of it in the record. That would also be another issue that could surface at the hearing. That's why there's a need for a hearing. So we have a trial without apparent constitutional error, right? That produces a conviction. Yes, there's no other, this actual innocence is not tethered to another constitutional claim. But there's no basis to make the actual innocence claim any weaker or less without the other constitutional claim. Well, look, there are members of the federal judiciary who would say that's it, that's all we need to know, right? Maybe, maybe. That how is a later retrial, ten years later, in essence a full retrial of the charges in front of a federal judge an improvement on the original state court jury trial? We also want to have the system fair. We don't want innocent people locked up. We want to at least give them a hearing. I mean, that's my argument here today. And I don't think it's insignificant. Because if you really analyze all the cases that I've cited, they've given them some sort of hearing or some sort of discovery where they said every case that they've denied a hearing, it was because the recantation did not automatically defeat the crime. I see my time is up unless I have any... Thank you. Ms. Schaefer. Good morning. My name is Sarah Schaefer. I'm an assistant attorney general with the state of Wisconsin, and I represent the respondent in this case, Warren Gitman. This court should affirm the district court's decision that dismissed Mr. Arnold's petition for writ of habeas corpus. This court should conclude that Arnold cannot show that no reasonable juror would have convicted him in light of the new evidence, and therefore his actual innocence claim does not excuse the procedural bar of his untimely filed petition. Ms. Schaefer. Yes. Ms. Schaefer. No court, state or federal... I'm sorry. There is no court, either state or federal, that has heard M.A. recant in open court and evaluate the credibility of that recantation. Just a matter of prioritizing the questions that we take up in this case, including the question of whether there is such a thing as a freestanding of actual innocence. Doesn't it make sense to start with the credibility of the recantation and have that resolved before we reach any other issues? I don't think that this court needs to remand for an evidentiary hearing because, as this court stated in Gladney v. Pollard and as the district court stated in this case, it is not the role of the court to make an independent factual determination about what likely occurred, but rather assess the likely impact of the evidence on reasonable jurors. And so it doesn't... I'm sorry. Wouldn't you agree that there is a qualitative, if not a substantive difference, between a victim's prior inconsistent statements to other witnesses and his outright recantation of his trial testimony? I think what the district court and the court of appeals in this case said, it was the same substance, the same thing that came out in the trial, was that he recanted to other witnesses. He recanted, no, this never happened. And so basically the district court and the court of appeals said, they've heard this evidence before, we don't believe you, so you don't get a hearing and you don't get a new trial. The Anglo-American legal system is built largely upon the difference between live sworn testimony subject to cross-examination and out-of-court declarations, and that's what we have here. Correct. At least if there were a hearing and if M.A. were to take the position asserted now in his affidavit, live, in person, that's very different from having an aunt say, he told me X, right? I would agree with that, yes, Your Honor. In this case, however, there was evidence from the clinical psychologist about recantations, and I appreciate opposing counsel's discussion on recantation in his reply brief. But the clinical psychologist specifically testified about recantations from sexual abuse victims, specifically adolescents, and this is what the jury heard about recantations, that an adolescent may finally disclose that they have been abused. What we often find is that adolescents who did recant, it generally is in response to some very strong statements from people about the damage that they are doing to their family. The number of recantations, because they are not true, is very small. So the jury heard this evidence and the jury heard the recantations. So if we have this new evidence of the victim's recantation, the victim's affidavit, the jury still heard evidence from the clinical psychologist that said when an adolescent recants in sexual abuse, it is very rare that those recantations are true. Go ahead. What if this is one of them? Look, it seems to me that only a fact finder, after hearing M.A. testify in open court, can assess how credible his recantation is, and only then can a court evaluate whether a jury presented with the son's recantation still would have convicted Arnold, who is spending his life in jail. Correct, Your Honor. My response to that is basically, in the Gladney v. Pollard decision this court determined, what the court needs to look at is not whether it is credible. The district court is not supposed to make those factual findings, and that is what the district court said. As it said, you do not make an independent factual determination about what likely occurred, but you assess the likely impact of the evidence on the reasonable jurors. So you would assess, my argument is that you assess the recantation evidence with the evidence that was presented at trial, which included the clinical psychologist's testimony that said, recantations by adolescents of sex abuse crimes are not credible, especially, she said, when the abuse comes from a parent. His affidavit, was it? His affidavit. The clinical psychologist's affidavit? No, the clinical psychologist testified at trial. Testified at trial. Yeah. So the testimony was, well, you tell me exactly what it said. Okay. The testimony of the clinical psychologist was this. An adolescent may finally disclose that they have been abused. What we often find is that adolescents who did recant, it generally is in response to some very strong statements from people about the damage that they are doing to the family. The number of recantations, because they are not true, is very small. More compelling reasons that an individual would recant is pressure from somebody or an awareness of the consequences of having disclosed. That is on the record document 31-2. And that was subject to cross-examination. Correct. And Michael did testify that he felt pressured by his aunt to say the abuse did not happen. We don't know if any of that happened. We don't know if any of that happened here. We don't know if he was pressured. We don't know. She's talking in general. Your psychologist is talking in her view of general, you know, generality. Correct. Look, if the district court deems the recantation to be incredible or insufficiently strong to meet the actual innocence standard, then there will be no need to consider whether a freestanding claim of actual innocence should be recognized. I don't know why you're fighting so hard against this. I really don't. There's nothing that requires a district court to hold an evidentiary hearing on a freestanding actual innocence claim where the only evidence presented is an affidavit. The AADPA does provide, does permit for evidentiary hearings when there's a gateway claim, but there's nothing that requires a district court to hold an evidentiary hearing on evidence that is presented in actual evidence claims. And what the district court did in this case is what this court said in Gladney can do. It looks at what the effect of the new evidence would have on a properly instructed reasonable juror. And it determined under the lower Schlupp standard as opposed to Herrera standard that Arnold failed to show that no reasonable juror would have likely convicted him. Do you think it would have been an error for the district judge to hold a hearing in this case? I probably would have contested it for the same reasons, Your Honor. It wouldn't be appealable. Suppose we get an affidavit where a witness says, I was threatened. That's why I testified the way I did at trial. Would that warrant a hearing? So is it in this case all that Michael said was I was threatened? Let's just use initials, please. Okay. So I think in this case if that was basically Michael testified at trial that there was no threat. Please don't identify the victim. That's the third time you've done that. Apology. Let me go back to the question. Not this case. Okay. Suppose it's a murder case. We know there's a crime, but the case depends on one eyewitness. There's a conviction. The eyewitness later comes in and says a fellow gang member threatened him, that he had to testify to pin the murder on the defendant. Would we have to have a hearing in that case? Could we have a hearing in that case? I think this court could have a hearing on that case. What's the difference? Because what's in front of this case is there was no evidence that he was threatened. The only evidence, and he specifically said, I was not threatened. This was a mutual, consensual, what happened was mutual. I was never threatened. No, no, no, no, no. Wait a second. I'm talking about threatened if I do or do not testify in a particular way, not in the offense. I think that there would have to be something more to get an evidentiary hearing than just that affidavit that I felt that there was some more evidence than just my answer to that question. Why should there be a difference between somebody who says I was physically threatened if I did not testify in a particular way and somebody who felt pressure from the family? I'm sorry, Aaron. I just don't know how to answer that question. In this case, he hasn't come forward with any threats, and he hasn't said that I felt threatened at the trial. At the trial, the argument was that he recanted because he was mad at his father, and that was discredited by the jury. So this is just another attempt to bring a different recantation in, and I don't think that his claim that he was threatened by a parole officer is enough to warrant an evidentiary hearing in this case. That's all I have, unless there are any other questions of this court. That's fine. Thank you, Counsel. My time has expired. You have a minute. You don't have to use it if you want to. I would just say that he should have a hearing and let the chips fall where they may. He did say in his affidavit he felt pressured, and I don't want to exaggerate. He felt pressured by the counselor. He wanted to get out of his own treatment. He thought the counselor was mad at his father because he gave him condoms. You have to take a close look at the affidavit. It needs to be fleshed out in the hearing. I mean, I couldn't say look at this affidavit, he wins automatically. I mean, he needs to be cross-examined. Everybody needs to be cross-examined at a hearing and then figure out what the standard is. Thank you for taking this case. The court appreciates your efforts. Thank you very much.